Honorable Vito J. Castellano Major General Division of Military and Naval Affairs
Your counsel has forwarded for our review a letter from a town attorney raising questions in relation to State laws governing disaster preparedness. The town supervisor proclaimed a local state of emergency based on a finding that the presence of water contaminants in an aquifer which is the sole source of water for certain town residents posed a reasonable apprehension of immediate danger to these residents and imperiled public safety. The proclamation cites test results indicating the presence of known or suspected carcinogens in private wells and concludes that the only immediate remedy to provide safe water is through the installation of filters on the wells. Further, the town has found an effective type of filter which is not available for purchase by the general public. In order to protect life and property and to bring the emergency under control, the supervisor ordered the purchase, installation and maintenance of these filters by the town at town expense on private wells within the affected area of the town. The questions raised are whether the declaration of local emergency was proper, and whether the town is authorized to pay out of general town funds for the filters and other expenses related to the declared emergency.
The chief executive of a county, city, town or village is authorized to proclaim a local state of emergency within any part or all of the territorial limits of the local government "in the event of a disaster, rioting, catastrophe or similar public emergency * * * or in the event of reasonable apprehension of immediate danger thereof, and upon a finding by the chief executive thereof that the public safety is imperiled thereby" (Executive Law, § 24[1]). The term "chief executive" is defined to include a supervisor of a town (id., § 20[2][f][4]). "Disaster" means "occurrence or imminent threat of wide spread [sic] or severe damage, injury, or loss of life or property resulting from any natural or man-made causes, including, but not limited to, fire, flood, earthquake, hurricane, tornado, high water, landslide, mudslide, wind, storm, wave action, volcanic activity, epidemic, air contamination, blight, drought, infestation, explosion, radiological accident or watercontamination" (emphasis supplied) (id., § 20[2][a]). During a local state of emergency, the chief executive may promulgate emergency orders to protect life and property or to bring the emergency situation under control (id., § 24[1]). A local emergency order remains in effect for five days after promulgation unless sooner terminated by the chief executive (id., § 24[2]). The chief executive may extend an order declaring a local emergency for additional five-day periods during the pendency of the emergency (ibid.).
We draw no conclusions about whether the facts supported the declaration of a local emergency or whether appropriate action was taken, as these are matters that can be determined only upon review of local conditions existing at the time of the declaration and during the pendency of the emergency. In our view, however, the presence in private well-water supplies of known or suspected carcinogens which pose a risk to public health and safety establishes a basis for the declaration of a local emergency. We believe that under these circumstances an apprehension of immediate danger from a disaster or public emergency is reasonable and a finding that the public safety is imperiled would be warranted (id.,
§ 24[1]). Further, the definition of disaster includes the occurrence or imminent threat of severe injury or loss of life resulting from water contamination (id., § 20[2][a]). It is clear that a town supervisor is a chief executive, with authority to declare a local state of emergency in all or a part of the territory of a town and to promulgate local emergency orders to protect life and property or to control the emergency (id., §§ 20[2][f][4], 24[1]). There is no requirement that the town board approve the declaration or emergency orders.
The stated policy underlying the disaster preparedness statute is to provide local chief executives with authority and responsibility in relation to the development and implementation of disaster preparedness programs (id., § 20[1][b]). Chief executives are given extraordinary powers during local emergencies (see, e.g., § 24[1]). The Legislature, however, has authorized the declaration of an emergency only under limited circumstances and has limited the duration of an emergency to five days (id., § 24[1][2]). Upon the expiration of each five-day period, the emergency would terminate unless the chief executive, upon making the required statutory findings, extends the emergency.
We believe that the expenses of an emergency are proper town charges. It is provided that:
 "Whenever a local state of emergency has been declared pursuant to this section, the chief executive of the county in which the local state of emergency has been declared, or where a county is wholly contained within a city, the chief executive of the city, may request the governor to provide assistance under this chapter, provided that such chief executive determines that the disaster is beyond the capacity of local government to meet adequately and state assistance is necessary to supplement local efforts to save lives and to protect property, public health and safety, or to avert or lessen the threat of a disaster."
(Emphasis supplied; id., § 24[7].)
 "Upon the threat or occurrence of a disaster, the chief executive of any political subdivision is hereby authorized and empowered to and shall use any and all facilities, equipment, supplies, personnel and other resources of his political subdivision in such manner as may be necessary or appropriate to cope with the disaster or any emergency resulting therefrom." (Id., § 25[1].)
The stated policy underlying disaster preparedness is that local government and emergency service organizations play an essential role as the first line of defense in times of disaster and that State resources be available to respond to disasters that are beyond the capability of local governments and emergency service organizations (id., § 20[1][a] and [d]).
We note that the regulation of conduct on private property is permissible during an emergency (see, e.g., id., § 24[1]). While, generally speaking, the purchase and installation at town expense of filters for private wells would constitute an unlawful gift of public funds (NY Const, Art VIII, § 1), such expenditures would serve a lawful public purpose as an appropriate response to an emergency In our view, once the emergency terminates, the town should make all possible efforts to recoup its expenses. If possible, the filters should be removed and, if feasible, sold or utilized for general town purposes.
We conclude that the presence in private well-water supplies of known or suspected carcinogens which pose a risk to public health and safety establishes a basis for declaration of a local state of emergency. The expenses of combating the emergency are lawful town charges.